UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**GREGORY B. DUNCAN** and
**LAURIE L DUNCAN**,

Case No. **07-61053-7**

Debtors.

# MEMORANDUM OF DECISION

At Butte in said District this 16th day of March, 2009.

In this Chapter 7 case the Trustee Darcy M. Crum ("Crum") filed on October 24, 2008, a Motion for Approval of Compromise Settlement (Docket No. 251) with John Fayle ("Fayle"), a creditor who filed Proof of Claim No. 26 and the Plaintiff in Adversary Proceeding No. 08-00060. Objections were filed by the Montana Department of Revenue ("DOR") (Docket No. 252). After notice a hearing on the Trustee's Motion was held at Missoula on February 12, 2009. Crum appeared and testified, represented by attorney John P. Paul. The DOR was represented by attorney Lynn Hamilton Butler ("Butler") and special assistant attorney general Keith Jones. Fayle was represented by attorney James H. Cossitt ("Cossitt"). The Debtors were represented by attorney Harold V. Dye, who withdrew Debtors' objection to Fayle's Proof of Claim and supported the Trustee's proposed settlement. Exhibits ("Ex.") 1, 2, A, B, C, and D were admitted. After the conclusion of the parties' cases-in-chief the Court heard argument from counsel regarding the elements required for approval of settlements, then took the matter under advisement. This matter is ready for decision. For the reasons set forth below the Court will enter a separate order overruling the DOR's objections, granting the Trustee's Motion and approving the settlement with Fayle of Adv. No. 08-60 and Proof of Claim No. 26.

1

This Court has original and exclusive jurisdiction in this Chapter 7 case under 28 U.S.C. § 1334(a), and has jurisdiction in Adv. No. 08-60 under 28 U.S.C. § 1334(b). The Trustee's Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

Compromises and settlements are governed by Rule 9019(a), F.R.B.P., which provides in pertinent part: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement...." The bankruptcy court is vested with considerable discretion in approving compromise and settlements. *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988). This Court addressed the test for compromise and settlement under F.R.B.P. Rule 9019(a) *In re Schrock*, 9 Mont. B.R. 414, 416-417 (1991) as follows:

> "Although the bankruptcy court has great latitude in authorizing a compromise, it may only approve a proposal that is 'fair and equitable.'" *Woodson v. Fireman's Fund Ins. Co.*, 839 F.2d 610, 620 (9th Cir. 1988) (Citing *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir.) *cert. denied sub nom. Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed. 2d 122 (1986). In evaluating a settlement, the Court must consider:
>
>> '(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.' *A & C Properties*, 784 F. 2d at 1381.
>
> *Woodson*, 839 F. 2d at 620 (additional citation omitted).
>
> *See also, In re MGS Marketing*, 111 B.R. 264 (9th Cir. BAP 1990). In addition to the four prong test set forth in *A & C Properties*, it is also well established that the law favors compromise. *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976). In accordance with that principle, Bankruptcy Rule 9019(a) gives this Court broad authority to approve a compromise or settlement. *In re General Store of Beverly Hills*, 11 B.R. 539, 542 (9th Cir. BAP 1981). The determination of whether to approve a compromise or settlement is a matter within the sound discretion of this Court. *Providers Benefit Life Insurance Co. v. Tidewater Group, Inc.*, 13 B.R. 764, 765 (Bankr. N.D.Ga. 1981). *See also, In re Lions Capital Group*, 49 B.R.

163, 175-76 (Bankr. S.D. N.Y. 1985).

## FACTS & PROCEDURAL HISTORY

This case commenced as a Chapter 11 bankruptcy on September 11, 2007. The Court converted the case to Chapter 7 by Order entered on August 18, 2008.

The DOR filed Proofs of Claim Nos. 13 and 14, then amended their claims to assert secured claims in the amounts of $229,634.94 for 2004 taxes and $187,174.82 for 2003 and 2004 taxes, both secured by warrants for distraint. No objections have been filed to allowance of the DOR's claims.

Fayle filed Proof of Claim No. 26 on August 18, 2008, and filed an amended claim on August 20, 2008, asserting an unsecured nonpriority claim in the amount of $800,000. Fayle described the basis for his claim as "services performed per contract," and calculated at ten percent (10%) of the transaction price for financing[1] between Public Realty Capital and the Debtors, the Duncans. Debtors filed an objection to Fayle's claim, but their attorney Dye withdrew the objection at the hearing on February 12, 2009. The Trustee filed an objection to Fayle's claim, which is resolved by the pending settlement.

Fayle never sought or received court approval of his employment as a professional. Fayle initiated Adversary Proceeding No. 08-00060 on August 26, 2008, when he filed a complaint, Ex. 1, against the Debtors setting forth seven claims for relief[2] based on a loan assistance

---

[1]DOR's counsel asked the Trustee whether Fayle found financing for the Debtors, and Crum responded that Fayle contended he had.

[2]Fayle's claims for relief stated in the complaint are: Count I (administrative claim under 11 U.S.C. § 503(b)(1)(A)); II (administrative claim under § 503(b)(3)(D)); III (administrative claim for attorney's fees and costs under § 503(b)(4)); IV (Negligence); V (breach of fiduciary duty); VI (for recovery of reasonable value of services under 11 U.S.C. § 105(a)); and VII (de

agreement (Ex. A) and addendum (Ex. B), and requesting an award of administrative claim, attorneys fees and costs.  Debtors' moved to dismiss the adversary proceeding, and that motion is pending.  Crum testified that Fayle does not have a secured claim, and that the loan assistance agreement attached to Fayle's complaint was a prepetition executory contract which expired by the time the case was converted to Chapter 7[3].

Crum was appointed Chapter 7 Trustee in August 2008.  Docket No. 196.  Crum applied for and was authorized to employ herself as attorney for the estate on September 5, 2008.  She testified that she reviewed the pleadings, and learned that there were several pending foreclosures against property of the estate.

After conversion of this case to Chapter 7, but prior to Crum's appointment as Trustee, Debtors had filed a motion (Docket No. 170) to sell their residence in Whitefish, boats and vehicles free and clear of liens, to Public Realty Capitol, Inc. ("PRC"), for the sum of $8 million.  Crum testified that Fayle located the eventual purchaser, PRC.  The Debtors' motion further requested leave to pay creditors from the sale proceeds, including the DOR in the amount of $525,933.25.  Objections to the sale were filed by several creditors, including the DOR, IRS and Fayle, and the Debtors withdrew their motion.

Foreclosure proceedings against the Debtors' real property were commenced by Wells Fargo Bank, N.A. ("Wells Fargo") when it filed a motion to modify stay (Docket No. 202) on September 10, 2008, seeking to enforce its rights under a deed of trust and prior stipulation.

---

facto assumption of loan assistance agreement).

[3]The loan assistance agreement is dated August 17, 2007, and at paragraph 2 provides for Fayle to be paid for obtaining financing for a period of 12 months.

Crum testified that there were several pending foreclosures. The Trustee and Wells Fargo entered into a stipulation (Docket No. 207) on September 15, 2008, which the Court approved, and which granted the Trustee sixty days to sell the property and pay Wells Fargo in full, or Wells Fargo would be entitled to proceed immediately with a foreclosure sale.

The Trustee filed her motion to sell property on September 23, 2008 (Docket No. 220), seeking to sell seven tracts of real property free and clear of liens to PRC for the cash sum of $8 million[4]. Crum's motion lists several liens on pages 2 and 3, including the DOR's warrants for distraint and other tax liens. Crum also moved to shorten the time for response, which the Court granted and set the hearing on the Trustee's motion for October 9, 2008. Fayle filed an objection (Docket No. 228) to the Trustee's motion for sale, asserting his claim set forth on his Proof of Claim and Adv. No. 08-60. The Trustee filed a response and objection to Fayle's claim, asking that Proof of Claim No. 26 be disallowed.

Crum testified that Fayle affected her sale to PRC when he filed his Proof of Claim and Adv. No. 08-60. She testified that she had no leeway because her sale to PRC was due to close, and that without a settlement with Fayle there would be no sale because the estate would lose the Debtors' real property to Wells Fargo's foreclosure. Crum explained that Fayle would have been given a hearing on his objection to the Trustee's motion to sell property, and that she had only a ten day window to complete the sale before foreclosure and did not have time for a hearing. Under questioning by the Court Crum answered "Yes" when asked whether the sale to PRC would have been lost without her settlement with Fayle.

---

[4]Crum's sale to PRC was different than the Debtors' proposed sale to PRC, because the latter included vehicles and boats which were not included in the Trustee's sale.

Crum negotiated a settlement with Fayle, the terms of which she described as payment to Fayle of an administrative expense priority claim in the amount of $5,000 under § 503(b)(1)(A), in exchange for which Fayle agreed to dismiss Adv. No. 08-60 and to withdraw his Proof of Claim and his objection to the Trustee's motion for sale. Crum testified that the settlement was essential to the estate because without it there would have been no sale and the property would have been lost through foreclosure, and the settlement reduced Fayle's $800,000 claim to $5,000. Under cross examination by DOR's counsel Crum testified that in her judgment it was best to settle with Fayle for a $5,000 administrative claim in order to get rid of an expensive adversary proceeding and Fayle's objection to the Trustee's sale, and to get Fayle to withdraw his Proof of Claim. She testified that she got a lot resolved for not a lot of money.

The Trustee's sale of property to PRC was approved and closed. Crum testified that secured creditors were paid from the $8 million in sale proceeds, including the DOR which she paid $419,709.72 from the sale but continued to have an unsecured nonpriority claim in the amount of approximately $600,000 which was not the subject of warrants for distraint. Crum testified she had approximately $225,000 in sale proceeds remaining.

Crum testified that she considered the settlement factors listed above from *A & C Properties*, 784 F. 2d at 1381. With respect to the probability of success in the litigation, Crum testified that results in litigation are always uncertain, though she always thinks she will be successful. She testified that she thought she would prevail in Adv. No. 08-60, but that the timing did not allow her to litigate because of the risk of loss of the property through foreclosure if Fayle's claims were not resolved. Under questioning by Fayle's counsel Crum testified that Fayle may have prevailed under Counts II and VI of the complaint. Under cross examination by

6

DOR's counsel Crum testified that she relied on the facts that Fayle had been involved in the Chapter 11 proceeding for some time working with the Debtors to find financing to pay their creditors[5], and that he had a basis for his complaint. No evidence was offered to the contrary.

With respect to the second factor, the difficulties, if any, to be encountered in the matter of collection, Crum testified that it was not at issue.

With respect to the third factor, the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, Crum testified that this was the biggest factor for her because of the delay and expense to the creditors which would result from the loss of the sale and litigating Fayle's seven-count complaint against an experienced litigator. She testified that litigating the adversary proceeding would have involved lengthy and expensive discovery, and she was positive that the litigation would be fact intensive. She testified that in her opinion the cost of defending Adv. No. 08-60 and litigating her objection to Fayle's Proof of Claim and objection to sale would have exceeded the $5,000, which she agreed to pay Fayle in the settlement. She testified that if Fayle had won in the litigation, Ex. B provided for an award of reasonable attorney's fees, which she discussed with Fayle's counsel.

With respect to the fourth factor, the paramount interest of the creditors and a proper deference to their reasonable views in the premises, Crum testified that without the settlement with Fayle the estate would not have been able to pay secured claims of the DOR and IRS because the property would have been lost through foreclosure rather than sold for proceeds to pay the creditors. She testified that no other creditor filed an objection to the proposed settlement, and that she received "thank-yous" from other secured creditors upon payment.

---

[5]Crum testified that she asked the Debtors if Fayle was involved and they said "Yes."

Crum answered "Yes" when asked if the settlement reflected the Trustee's sound business judgment. The DOR called no witnesses of its own in opposition, so Crum's testimony is uncontroverted.

## DISCUSSION

### I. Contentions of the Parties.

The Trustee seeks approval of the settlement with Fayle, including the $5,000 administrative claim under § 503(b)(1)(A)(i). The Debtor supports the settlement. Fayle supports the settlement and contends that the DOR failed to consider the cost of litigation without the settlement, even if Fayle did not prevail, and failed to consider the possibility that Fayle might prevail and be awarded in excess of the settlement amount.

DOR's counsel argued at hearing that there is no basis in law or fact for a $5,000 administrative claim or priority claim for Fayle. Butler argued that blackmail is not an administrative expense, and that Fayle used litigation to extort money from the estate which is the DOR's money[6]. DOR contends that Fayle was not employed as a professional under § 330, and that his claim is an unsecured prepetition claim based on an expired contract that was not assumed under 11 U.S.C. § 365. DOR contends that it has an administrative claim to the sale proceeds by virtue of a capital gains tax incurred on the sale of the real property to PRC.

### II. Administrative Expense – § 503(b)(1)(A)(i).

The basis for the proposed $5,000 administrative claim for Fayle in the settlement is § 503(b)(1)(A)(i) from Count I of the complaint. Section 503(b)(1)(A) provides that after notice

---

[6]Blackmail and extortion are criminal offenses, outside of this Court's purview. Nothing in this decision prevents the DOR from prosecuting the alleged offenses in an appropriate forum.

and a hearing "there shall be allowed administrative expenses . . . including – (1)(A) the actual, necessary costs and expenses of preserving the estate, including – (i) wages, salaries, and commissions for services rendered after the commencement of the case ...." Section 503(b)(1)(A) does not require that a person seeking payment under that section be employed as a professional under § 330, so that objection by DOR to the settlement has no merit.

The notice and hearing requirement of § 503(b) is not a bar to approval of the settlement. The Trustee's Motion for approval of the settlement cites § 503(b)(1)(A) in its first paragraph. The Motion includes a notice granting the parties time to respond and request a hearing, and was served on dozens of parties. Only the DOR filed an objection.

The burden of proving an administrative expense claim is on the claimant. *Gill v. Tishman Construction Corp. (In re Santa Monica Beach Hotel, Ltd.)*, 209 B.R. 722, 725 (9th Cir. BAP 1997). In order to keep administrative costs to the estate at a minimum, actual, necessary costs and expenses of preserving the estate are construed narrowly. *Id.*; *NLRB v. Walsh (In re Palau Corp.)*, 139 B.R. 942, 944 (9th Cir. BAP 1992), *aff'd*, 18 F.3d at 750. The Ninth Circuit explained the applicable standard in *Gonzalez v. Gottlieb (In re Metro Fulfillment, Inc.)*, 294 B.R. 306, 309 (9th Cir. 2003):

> Section 503(b)(1)(A) allows for administrative expenses, "including ... the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case ...." Administrative expenses
>
>> must be the actual and necessary costs of preserving the estate for the benefit of its creditors. The terms "actual" and "necessary" are [to be] construed narrowly ....
>
> *Burlington N.R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 853 F.2d 700, 706 (9th Cir.1988) (citations omitted).

9

    To establish an administrative expense claim, a claimant must show that the debt:

    (a) arose from a transaction with the debtor in possession as opposed to the preceding entity . . . ; and

    (b) directly and substantially benefitted the estate.

*Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.)*, 66 F.3d 1091, 1094 (9th Cir.1995).

Section 503(b)(1)(A) is construed narrowly in order to maximize and protect the limited assets of the bankruptcy estate for the benefit of the unsecured creditors, which is particularly important in a Chapter 7 case. *NLRB v. Walsh (In re Palau* Corp.), 18 F.3d at 746, 750 (9th Cir.1994).

DOR's own Ex. B is the addendum to loan assistance agreement between the Debtor Gregory B. Duncan and Fayle, dated November 17, 2007, which modified Ex. A and is an agreement between the Debtor-in-Possession after the petition date[7]. Crum's testimony and support for the settlement establish without evidence to the contrary that Fayle's services locating PRC, which purchased the property, directly and substantially benefitted the estate. Thus there is evidence in support of both requirements under § 503(b)(1)(A).

**III. *A & C Properties* Requirements.**

The first factor to evaluate whether a settlement is fair and equitable is the probability of success in the litigation. *A & C Properties*, 784 F. 2d at 1381. A precise or exact judicial determination of the likely outcome is not required because that would defeat the purpose of compromising the litigation. *In re Telesphere Communications, Inc.*, 179 B.R. 544, 553 (Bankr.

---

[7]Ex. B was not submitted to this Court for approval. However, the Trustee does not object and instead seeks approval of the $5,000 administrative expense to Fayle. Debtors initially sought approval of the sale to PRC, but that was later withdrawn.

N.D. Ill 1994); *In re Energy Co-op., Inc.*, 886 F.2d 921, 929 (7th Cir. 1989), quoting *In re Penn Central Transp. Co.*, 596 F.2d 1102, 1114 (3rd Cir. 1979).  In the Ninth Circuit a bankruptcy court need not conduct an exhaustive investigation into the validity of the asserted claim, but rather "[i]t is sufficient that, after apprising itself of all facts necessary for an intelligent and objective opinion concerning the claim's validity, the court determines that either (1) the claim has a 'substantial foundation' and is not 'clearly invalid as a matter of law,' or (2) the outcome of the claim's litigation is doubtful." *United States of America v. Alaska National Bank, et al. (Matter of Walsh Const., Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982) (citing cases).  The Ninth Circuit cited *Walsh* approvingly in *A & C Properties,* 784 F.2d at 1380-81, noting that the purpose of a compromise agreement is to allow the trustee and creditors "to avoid the expenses and burdens associated with litigating sharply contested and dubious claims," and that the "law favors compromise and not litigation for its own sake."  *See also Port O'Call Investment Co. v. Blair (In re Blair)*, 538 F.2d 849, 851 (9th Cir. 1976).

      DOR objects that Fayle's claim for a $5,000 administrative expense has no basis in fact or law.  However, DOR called no witness in support of that attorney argument.  Attorney argument is not evidence.  *Hurley v. Student Loan Acquisition Auth. of Ariz., et al.*, (*In re Hurley*), 258 B.R. 15, 23 (Bankr. Mont. 2001); *United States v. Velarde-Gomez*, 224 F.3d 1062, 1073 (9th Cir. 2000); *Exeter Bancorporation v. Kemper Securities Group, Inc.*, 58 F.3d 1306, 1312 n.5 (8th Cir. 1995) (Statements of counsel are not evidence and do not create issues of fact), citing *United States v. Fetlow*, 21 F.3d 243, 248 (8th Cir. 1994), *cert. denied*, 513 U.S. 977, 115 S.Ct. 456, 130 L.Ed.2d 365 (1994).

      Crum testified that, while she thought she would prevail in Adv. No. 08-60, she admitted

that Fayle might prevail under Counts I, II and VI, and that if he prevailed he could be awarded attorney fees and costs. The evidence set forth above supports Fayle's claim under § 503(b)(1)(A)(i), particularly Crum's uncontroverted testimony and exhibits showing that Fayle found the buyer, PRC, pursuant to a transaction with the debtor-in-possession, which directly and substantially benefitted and preserved the estate through the $8 million sale to PRC. The evidence shows that without Fayle's efforts, and his agreement to settle his claims, the estate's property likely would have been lost to foreclosure sale by Wells Fargo. Based on the uncontroverted evidence, the Court determines that Fayle's claim has a substantial foundation, is not "clearly invalid as a matter of law," and that the outcome of Adv. 08-60 is sufficiently doubtful to find that the probability of success in the litigation weighs in favor of settlement. *Walsh*, 669 F.2d at 1328.

The second factor is the difficulties, if any, to be encountered in the matter of collection. *A & C Properties*, 784 F. 2d at 1381. Crum testified that this factor is not at issue. In Adv. No. 08-60 Fayle is the Plaintiff. The Trustee has not appeared in Adv. No. 08-60, and therefore has not asserted a counterclaim or request for affirmative relief[8]. This highlights that, as far as the current record shows, the litigation would result only in costs and expenses to the estate, and not in any affirmative award.

The third factor is the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it. *A & C Properties*, 784 F. 2d at 1381. Crum's testimony that the litigation would be fact intensive, involve lengthy discovery, and would result

---

[8]DOR's suggestion that the Trustee could recover under Rule 11 is attorney argument, unsupported by any evidence.

in delay and expense to the estate, and loss to creditors, from the loss of the sale and litigating Fayle's seven-count complaint against an experienced litigator. She testified that litigating the adversary proceeding would have involved lengthy and expensive discovery, and be fact intensive. She testified that in her opinion the cost of defending Adv. No. 08-60 and litigating her objection to Fayle's Proof of Claim and objection to sale would have exceeded the $5,000 that she agreed to pay Fayle in the settlement, and that if Fayle prevailed in the litigation Ex. B provided for an award of reasonable attorney's fees. Crum testified that the third factor was the biggest factor to her in support of the settlement because otherwise she would have lost the sale of property for $8 million due to foreclosure, and instead be left with the cost of litigating Fayle's Proof of Claim and Adv. No. 08-60. DOR's counsel agreed that Crum had a short time to sell the property, and offered no evidence which contradicted Crum's testimony. This Court agrees that the third factor weighs heavily in favor of approving the settlement because of the risk of loss of the sale, and the delay and expense which would result in litigating Fayle's claims.

      The fourth and final factor is the paramount interest of the creditors and a proper deference to their reasonable views in the premises. *A & C Properties*, 784 F. 2d at 1381. Crum testified that several creditors thanked her for the sale. Only the DOR objected, and the DOR has never coherently articulated how Crum's settlement of Fayle's claims, without which the $8 million sale and substantial payment of money to the DOR as well as other creditors would have been lost to foreclosure, was not in its best interests. Based on Crum's uncontroverted testimony the Court finds that the fourth factor weighs heavily in favor of the settlement.

      Having determined that three of the four *A & C Properties* factors support approval of the settlement, the Court will overrule the DOR's objections, grant the Trustee's Motion and approve

her settlement with Fayle.

## CONCLUSIONS OF LAW

1. This Court has original and exclusive jurisdiction in this Chapter 7 case under 28 U.S.C. § 1334(a), and has jurisdiction in Adv. No. 08-60 under 28 U.S.C. § 1334(b).

2. The Trustee's Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

3. The Trustee satisfied her burden of proof under Rule 9019(a), F.R.B.P., of showing that three of the four factors listed *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986) weigh in favor of approval of her proposed settlement with John C. Fayle.

4. This Court exercises its discretion as provided in *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988) and approves the Trustee's settlement with Fayle.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above overruling the Montana Department of Revenue's objection (Docket No. 252), granting the Trustee's Motion for Approval of Compromise Settlement filed on October 24, 2008 (Docket No. 251), and approving the Trustee's compromise settlement with John Fayle of Proof of Claim No. 26 and Adversary Proceeding No. 08-00060.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

15